## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ODYSSEY TRANSFER AND TRUST COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ARC GLOBAL INVESTMENTS II, LLC, and MICHAEL J. MELKERSEN,<br><br>Defendants,<br><br>and,<br><br>TRUMP MEDIA & TECHNOLOGY GROUP CORP. f/k/a DIGITAL WORLD ACQUISITION CORP.,<br><br>Nominal Defendant. | Civil Action No. 24-729-GBW |

Joseph C. Schoell, Jaclyn C. Marasco, FAEGRE DRINKER BIDDLE & REATH LLP, Wilmington, DE; Michael MacPhail, FAEGRE DRINKER BIDDLE & REATH LLP, Denver, CO; Josh Peterson, FAEGRE DRINKER BIDDLE & REATH LLP, Minneapolis, MN.

*Counsel for Plaintiff*

Jason J. Rawnsley, Matthew D. Perri, Jessica E. Blau, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE.

*Counsel for Defendant ARC Global Investments II, LLC*

R. Garrett Rice, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; Benjamin J. Widlanski, KOZYAK TROPIN THROCKMORTON PA, Miami, FL.

*Counsel for Defendant Michael J. Melkersen*

John L. Reed, Ronald N. Brown, III, DLA PIPER LLP, Wilmington, DE.

*Counsel for Nominal Defendant Trump Media & Technology Group Corp.*

**MEMORANDUM OPINION**

October 23, 2025
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

The underlying dispute in this interpleader action is the ownership of 716,140 Class A shares and 25,000 warrants (the "Trump Media Securities") of Nominal Defendant Trump Media & Technology Group Corp. ("Nominal Defendant" or "Trump Media" or "Counterclaim Plaintiff"). Trump Media runs the social media platform Truth Social. In particular, ARC Global Investments II, LLC ("ARC") and Michael J. Melkersen ("Mr. Melkersen") both assert ownership of the Trump Media Securities. Plaintiff Odyssey Transfer and Trust Company ("Plaintiff" or "Odyssey") was unsure, as the escrow and transfer agent of the Trump Media Securities, how to resolve these competing assertions of ownership. Thus, on June 20, 2024, Odyssey filed its Complaint for Interpleader ("Complaint") (D.I. 1) in this Court to compel resolution of the ownership dispute. On August 13, 2024, Trump Media filed a nearly identical interpleader crossclaim (D.I. 45).

On the same day that Odyssey commenced this interpleader action, Mr. Melkersen commenced an action against ARC, Patrick Orlando ("Mr. Orlando"), ARC's purported manager, Odyssey and Trump Media in the 11th Judicial Circuit in Miami-Dade County, Florida ("the Florida state court action") to resolve the same ownership dispute. Mr. Melkersen selected the Florida state court in light of a mandatory and exclusive forum selection clause in an underlying agreement between ARC and Mr. Melkersen that requires them to litigate their dispute in the state and federal courts located in Miami-Dade County, Florida.

Now pending before the Court are five motions:

1. Odyssey's Motion for Retention, Discharge, Dismissal, and Attorneys' Fees ("Interpleader Motion") (D.I. 25), which has been fully briefed (D.I. 26; D.I. 34; D.I. 42);

3

2. ARC's Motion to Dismiss the Complaint for Interpleader ("FNC Motion") (D.I. 27), which has been fully briefed (D.I. 28; D.I. 36; D.I. 43);

3. Trump Media's Motion for Discharge and Dismissal ("Discharge Motion") (D.I. 31), which has been fully briefed (D.I. 32; D.I. 39; D.I. 46);

4. ARC's Motion for Realignment and to Dismiss for Lack of Subject Matter Jurisdiction ("Realignment Motion") (D.I. 52), which has been fully briefed (D.I. 53; D.I. 58; D.I. 63); and

5. ARC's Motion to Dismiss Trump Media & Technology Group Corp.'s Crossclaim for Interpleader ("Second FNC Motion") (D.I. 55), which has been fully briefed (D.I. 56; D.I. 67; D.I. 68).

As discussed in more detail below, the Court denies the Interpleader Motion because the 11th Judicial Circuit in Miami-Dade County, Florida can adequately resolve the ownership dispute. Similarly, the Court grants each of the FNC Motions, in which ARC seeks dismissal of the interpleader claim and crossclaim on the basis of *forum non convenience*, because the forum selection clause at issue requires that ARC and Mr. Melkersen litigate their dispute in the state and federal courts located in Miami-Dade County, Florida. The Court denies the two remaining motions as moot.

## I.    BACKGROUND

Trump Media "is a Delaware corporation with a principal place of business in Florida." D.I. 1 ¶ 7. The securities at issue are 716,140 Class A shares and 25,000 warrants of Trump Media. D.I. 1 ¶ 1.

"Odyssey is a Minnesota corporation with a principal place of business in Minnesota." D.I. 1 ¶ 4. "Odyssey serves as the securities transfer and escrow agent for TMTG, and in that capacity

is responsible for, among other thing, maintaining its security holder records and recording changes of ownership, including regarding TMTG common stock and warrants." D.I. 1 ¶ 11.

"ARC is a Delaware limited liability company" (D.I. 1 ¶ 5) with a "principal place[] of business in Florida" (D.I. 28 at 13; D.I. 36 (not contesting)). ARC asserts an interest in the Trump Media Securities. D.I. 1 ¶ 15.

Mr. Melkersen "is an individual domiciled and residing in Puerto Rico." D.I. 1 ¶ 6. Mr. Melkersen asserts a competing interest in the Trump Media Securities. D.I. 1 ¶ 16.

Mr. Orlando "is a resident of Florida." D.I. 28 at 13; D.I. 36 (not contesting). He is the purported manager of ARC. D.I. 38 at 4. Mr. Melkersen alleged in the Florida action that the Trump Media Shares are "owed to [Mr.] Melkersen by ARC and/or [Mr.] Orlando." *See* D.I. 28 at 7; D.I. 36 (not contesting).

Odyssey filed its Complaint in this Court on June 20, 2024 to compel resolution of the ownership dispute. D.I. 1. The same day, Mr. Melkersen filed a complaint in the 11th Judicial Circuit in Miami-Dade County, Florida against ARC, Mr. Orlando, Trump Media, and Odyssey. *See* D.I. 28 at 4; D.I. 36 (not contesting). In the Florida state court action, Mr. Melkersen alleged "rights to shares of TMTG under agreements and instruments entered into among himself, ARC, and [Mr.] Orlando, namely:

- A Subscription Agreement between himself, ARC, and DWAC dated August 2, 2021,
- The Membership Interest Purchase Agreement (the 'MIPA') among ARC, Orlando, and Melkersen dated March 16, 2023, and
- Promissory Notes between Melkersen and ARC dated July 14, 2022; July 18, 2022; and March 21, 2023."

*See* D.I. 28 at 4; D.I. 36 (not contesting).

The MIPA contains a forum selectin clause providing that the "jurisdiction for any legal action with respect to this Agreement shall be exclusively vested in, and the Parties hereby submit to the jurisdiction of, the state and federal courts located in Miami-Dade County, Florida." D.I. 28 at 5; D.I. 36 (not contesting). The MIPA also contains a choice-of-law clause that provides that the agreement "shall be governed by and construed (both as to validity and performance) and enforced in accordance with the laws of the State of Florida applicable to agreements made and to be performed wholly therein, and without giving effect to the conflict of law rules thereof." D.I. 28 at 5-6; D.I. 36 (not contesting).

On July 17, 2024, Odyssey filed its Interpleader Motion in this Court. D.I. 25. The next day, on July 18, 2024, ARC filed its FNC Motion. D.I. 27. On July 22, 2024, Trump Media filed its Discharge Motion. D.I. 31. On August 21, 2024, ARC filed its Realignment Motion. D.I. 52.

Meanwhile, on August 13, 2024, Trump Media filed its Answer & Crossclaims. D.I. 45. Therein, Trump Media, like Odyssey, asserted an interpleader crossclaim against ARC and Mr. Melkersen for resolution of the ownership dispute between them regarding the Trump Media Securities. D.I. 45 ¶¶ 24-32. On September 3, 2024, ARC filed its Second FNC Motion. D.I. 55.

## II.    LEGAL STANDARDS

### A.    Interpleader Actions

"The typical interpleader action proceeds in two distinct stages." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009). "During the first stage, the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants." *Id.* "During the second stage, the court determines the respective rights of the claimants to the interpleaded funds." *Id.*

**B.**     *Forum Non Conveniens*

"In federal court, the effect to be given a contractual forum selection clause in diversity

cases is determined by federal not state law." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d

Cir. 1995).  Under federal law, whether a Court should grant a motion to dismiss under *forum non*

*convenience* on the ground of a forum selection clause depends on whether: (1) the forum selection

clause is enforceable, (2) the forum selection clause applies to the claims at issue, (3) an adequate

alternative forum exists, and (4) the relevant public interest factors affecting the convenience of

the forum weigh in favor of dismissal.  *Automated Precision, Inc. v. Pare*, 631 F. Supp. 3d 185,

194 (D. Del. 2022); *Turner v. Lam Rsch. Corp.*, Civil Action No. 23-435-CJB, 2024 U.S. Dist.

LEXIS 205931, at *8 (D. Del. Nov. 13, 2024).  However, since the public interest factors will

rarely defeat a motion to dismiss on the basis of a forum selection clause, "the practical result is

that [valid and applicable] forum-selection clauses should control except in unusual cases."  *See*

*Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 64 (2013).

## III.     DISCUSSION

The Court divides its Discussion into the following four Sections: (A) The Court Denies

the Interpleader Motion; (B) The Court Grants the FNC Motion, (C) The Court Grants the Second

FNC Motion; and (D) The Court Denies the Remaining Two Motions as Moot.

**A.**     **The Court Denies the Interpleader Motion**

As described above, the "typical interpleader action proceeds in two distinct stages."

*Prudential Ins. Co. of Am.*, 553 F.3d at 262.  "During the first stage, the court determines whether

the interpleader complaint was properly brought and whether to discharge the stakeholder from

further liability to the claimants." *Id.*  "During the second stage, the court determines the respective

rights of the claimants to the interpleaded funds."  *Id.*

However, the availability of interpleader "jurisdiction does not require its exercise." *Schepis, Inc. v. Canelas*, No. 20-cv-2647 (LJL), 2020 U.S. Dist. LEXIS 188149, at *23 (S.D.N.Y. Oct. 9, 2020) (cleaned up). "Rather, it is well recognized that interpleader is an equitable remedy, and a federal court may abstain from deciding an interpleader action, if another action could adequately redress the threat that the stakeholder might be held doubly liable." *Id.* (quotations and citation omitted). In *Schepis*, the Southern District of New York held that the "proper disposition" of the funds at issue in the interpleader action would "depend on issues of state law that" the state court could entertain and that "resolution of the" state court action would preclude any "threat of double liability." *Id.* at *23-24. Thus, the Southern District of New York denied "the motion for interpleader." *Id.* at *24.

Here, the prospect that the Court has interpleader jurisdiction over this action "does not require" that the Court "exercise" such jurisdiction. *See id.* at *23. As described in greater detail *infra* § (B), "another action [i.e., the Forida state court action] could adequately redress the threat that [Odyssey] might be held doubly liable." *See id.* In addition, as in *Schepis*, the "proper disposition" or transfer of the Trump Media Securities "depend[s] on issues of state law that" the Florida state court can entertain, and "resolution" of that action would preclude any "threat of double liability" here. *See id.* at *23-24; *see also* D.I. 28 at 5-6 (observing that the MIPA provides that Florida law governs disagreements arising from the MIPA); D.I. 36 (not contesting). Therefore, the Court denies the Interpleader Motion.

**B.    The Court Grants the FNC Motion**

The Court grants the FNC Motion because, as described below: (1) The Forum Selection Clause is Enforceable, (2) The Forum Selection Clause Applies to the Claims at Issue, (3) An Adequate Alternative Forum Exists, and (4) The Relevant Public Interest Factors Weigh in Favor of Transfer.

8

1.    **The Forum Selection Clause is Enforceable**

"[F]orum selection clauses are presumed to be valid." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015). "The clause is considered valid unless the challenging party clearly shows that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching." *Id.* (cleaned up). Here, ARC contends that "the forum selection clause is valid and should be enforced." D.I. 28 at 14.

Odyssey, for its part, does not clearly contend that the forum selection clause is unenforceable. Instead, Odyssey contends, under the rubric of whether the alternative forum is adequate, that the Court should not "enforce" the forum selection clause because Odyssey is not a party to the "contract with" ARC, Mr. Orlando, and Mr. Melkersen, i.e., the MIPA. D.I. 36 at 1, 9-10. Under the same rubric of whether the alternative forum is adequate, Odyssey contends that it is not subject to either general or personal jurisdiction in Florida. D.I. 36 at 10-12. However, since Odyssey raises these issues under the rubric of whether the alternative adequate forum is adequate, and not whether the forum selection clause is enforceable, the Court holds, in concert with the presumption of validity, that the forum selection clause here is valid and enforceable.

Even had Odyssey raised its contractual and jurisdictional arguments in the context of enforceability, those arguments would still fail, because the Court is not enforcing the forum selection clause against Odyssey. Rather, the Court is enforcing the forum selection clause against ARC and Mr. Melkersen, and both agree that the Florida state court should resolve their dispute. *See FUFC, LLC v. Excel Contractors, LLC*, No. 18-1095-SDD-EWD, 2021 U.S. Dist. LEXIS 20739, at *14 (M.D. La. Feb. 2, 2021) (granting motion to dismiss interpleader counterclaim on the basis of *forum non conveniens* and a forum selection clause). Moreover, Odyssey has the prerogative, like every litigant, to challenge any basis of any suit against it, including in the Florida state court action.

9

2.      **The Forum Selection Clause Applies to the Claims at Issue**

As described above, the MIPA, which governs the ownership of the Trump Media Securities, contains a forum selection clause providing that the "jurisdiction for any legal action with respect to this Agreement shall be exclusively vested in, and the Parties hereby submit to the jurisdiction of, the state and federal courts located in Miami-Dade County, Florida." D.I. 28 at 5; D.I. 36 (not disputing). Odyssey does not contend that the forum selection clause does not apply to the real dispute at issue in this interpleader action, i.e., the ownership of the Trump Media Securities. Thus, the forum selection clause applies to the claims at issue.

3.      **An Adequate Alternative Forum Exists**

"Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction." *Jane Doe L.C. v. Aimbridge Hosp., LLC*, No. 19-1762 (MN), 2020 U.S. Dist. LEXIS 172336, at *7 (D. Del. Sep. 21, 2020) (cleaned up). "A forum in which Plaintiff's claims are cognizable and Defendant is amenable to service should be declared unsuitable only in the rare circumstances where the remedy provided is so clearly inadequate or unsatisfactory as to provide no remedy at all." *Id.* (cleaned up).

As previewed above, Odyssey contends that the Florida state court is not adequate because Odyssey is not a party to the MIPA. D.I. 36 at 1. However, that Odyssey is not party to the MIPA does not undermine the Florida state court's ability to resolve the dispute between ARC and Mr. Melkersen on the ownership of the Trump Media Securities.

In addition, Odyssey contends that the Florida state court is not adequate because Odyssey is not subject to either general or personal jurisdiction in Florida. D.I. 36 at 10-12. However, this is a red herring because the case law concerns not whether the plaintiff is amendable to service in the alternative forum, but whether the defendant is amenable to service in the alternative forum. Here, each of the defendants have demonstrated their amenability and, even preference, to

10

resolving their dispute in the Florida state court. *See* D.I. 28 at 13 (observing that Mr. Melkersen

"chose to file in Florida"); D.I. 43 at 7-8 (confirming that ARC "wants to litigate the underlying

dispute" in Florida). Moreover, as described above, Odyssey may challenge the Florida state

court's jurisdiction over Odyssey, or any other basis of the lawsuit, in the Florida state court action

if Odyssey wishes.

**4.    The Relevant Public Interest Factors Weigh in Favor of Transfer**

"The public factors include: (1) court congestion; (2) the local interest in deciding local

controversies; (3) the benefit of litigating cases within a forum that traditionally applies the

applicable law; (4) the avoidance of unnecessary problems in law application, such as conflicts of

laws; and (5) the unfairness of burdening citizens with jury duty." *Ryanair DAC v. Booking

Holdings Inc.*, No. 20-1191-LPS, 2021 U.S. Dist. LEXIS 246386, at *7 n.6 (D. Del. Dec. 27, 2021)

(cleaned up). These factors, taken together, weigh in favor of dismissal.

**Court Congestion**: While ARC correctly observes that "U.S. District Court for the District

of Delaware has a heavy docket" (D.I. 28 at 15), Odyssey is correct that "ARC presents no

evidence or statistics to suggest that the Florida state court is less congested or more efficient than

this Court" (D.I. 36 at 17). *See, e.g., Carl Zeiss Meditec, Inc. v. XOFT, Inc.*, No. CA 10-308, 2010

WL 4024603, at *3 (D. Del. Oct. 13, 2010) (requiring specific supporting evidence showing that

the factors weigh in favor of dismissal). That said, the Florida state court action is further along

than this action. *See* D.I. 40, Ex. 9. This factor thus weighs, at least slightly, in favor of dismissal.

**Local Interest**: Odyssey is correct that "Delaware has a substantial interest in adjudicating

disputes involving companies [like ARC and Trump Media, that are] incorporated in Delaware"

(D.I. 36 at 16-17 (citing *Virentem Ventures, LLC v. YouTube, LLC*, No. CV 18-917, 2019 WL

2131877, at *6 (D. Del. May 16, 2019))). However, ARC has a principal place of business in

Florida (D.I. 28 at 13; D.I. 36 (not contesting)) and Trump Media is a nominal defendant, without

11

a real bone in this dispute.  In addition, Mr. Orlando and TMTG are "domiciled or have principal places of business in Florida."  *See* D.I. 28 at 5; D.I. 36 (not disputing).  For these reasons, this factor weighs, at least slightly, in favor of dismissal.

**Applicable Law**: The applicable law is Florida state law (*see* D.I. 28 at 16-17; D.I. 36 at 18) and, thus, this factor favors dismissal.

**Unnecessary Problems in the Application of the Applicable Law**: The parties do not meaningfully opine on the risk of unnecessary problems in the application of the applicable law and the Court does not anticipate any problems in the application of Florida state law.  Thus, this factor is neutral.

**Unfairness of Burdening Citizens with Jury Duty**: "Ultimately, this case has a greater impact on the affairs of [Florida] citizens than Delaware citizens," especially given that the applicable law is Florida state law and the salient dispute involves parties that reside in Florida. *See Korea CGM Members Ass'n v. Netflix, Inc.*, Civil Action No. 24-267-GBW, 2025 LX 116231, at *17 (D. Del. Feb. 28, 2025).  Thus, this factor weighs, at least slightly, in favor of dismissal.

## C.    The Court Grants the Second FNC Motion

As described above, Trump Media asserts a crossclaim of interpleader against ARC and Mr. Melkersen that is essentially identical to Odyssey's claim of interpleader against ARC and Mr. Melkerson.  D.I. 45.  In response, ARC filed its Second FNC Motion, requesting that the Court dismiss Trump Media's crossclaim on the basis of *forum non conveniens*, for essentially the same reasons ARC presented in its original FNC Motion.  D.I. 56 at 1 ("TMTG's [interpleader] crossclaim is essentially identical to that of [the interpleader claim for] the plaintiff . . . .  The two claimants to [the Trump Media Securities] are already litigants in an action pending in Florida filed by [Mr.] Melkersen, there because of a forum selection clause in the primary agreement between them requiring their disputes to be litigated in Florida. . . . Accordingly, there is no reason

12

for this Court to be burdened with this complex dispute when ARC and Melkersen have agreed to litigate in a forum that has stronger ties to most of the parties and issues (e.g., physical presence and choice of law)."). The Court accordingly grants ARC's Second FNC Motion on the same grounds that the Court grants ARC's original FNC Motion, i.e., the grounds discussed *supra* § III(B). *See FUFC, LLC*, 2021 U.S. Dist. LEXIS 20739, at *14 (granting motion to dismiss interpleader counterclaim on the basis of *forum non conveniens* and a forum selection clause).

**D.    The Court Denies the Remaining Two Motions as Moot**

Without any claims or crossclaims remaining, the Court denies the remaining motions (i.e., the Discharge Motion (D.I. 31) and the Realignment Motion (D.I. 52)) as moot.

**IV.    CONCLUSION**

In conclusion, the reduction of this controversy to a single forum will preclude an unnecessary expenditure of scarce judicial resources and facilitate resolution of the dispute between ARC and Mr. Melkersen in one of the forums originally envisioned per the mandatory and exclusive forum selection clause. Therefore, and for the reasons discussed above, the Court denies the Interpleader Motion, grants each of the FNC Motions, and denies the two remaining motions as moot.[1] Since the Court was able to resolve these motions on the basis of the papers filed, the Court denies the requests for oral argument (D.I. 25; D.I. 51) as moot.

---

[1] In light of the Court's holdings, the Court does not squarely address all of the parties' arguments.